Counsel, we're back on the record here, and I believe we have the technical issues sorted out. At this time, Mr. Mertes, you may proceed with your argument. I'm going to suggest that you proceed from the beginning, because it may have been that not all of your argument was heard by the court, and you'll have the full time allotted to your original argument. Thank you, Justice. And may it please the court and counsel, my name is James Mertes, and I represent the defendant appellant Michael Bennett. Mr. Bennett raises two contentions of error on this appeal. First, the trial court committed reversible error by allowing the government to thwart the confrontation clause through clearly erroneous impeachment of a witness. Second, the trial court committed reversible error by failing to instruct the jury on the lesser mitigated offense of second degree murder. Underlying each of these issues is the ineffective assistance of defendant's trial counsel. Because the issues in this case are so interwoven with the facts of this case, I will discuss them within the context of my is a 38-year-old man who lived in Sterling, Illinois. On May 1, 2021, one of the state's witnesses, Chassidy Buckingham, lived in a single-family home in Sterling. That evening, Buckingham's boyfriend, Joshua Hamrick, and Bennett's girlfriend, Olivia Shealy, were inside Buckingham's home with Buckingham. Now, this was no tea party. Hamrick was well into week two of a violent meth-fueled bender. Two weeks earlier, Hamrick... Counsel, I apologize for interrupting with regard to your summary of the facts, but as I mentioned earlier, and I apologize for the technical difficulties, I have a number of regarding each of the issues. The first question I'd like to ask you focuses on the prior inconsistent statement and the admission of that and your contention that there was an erroneous foundation. The defendant called Shelly, I don't know if it's now Shelly or Shealy, the defendant's girlfriend at trial, who testified in part favorably to the defense. With respect to the gun, I believe the testimony at trial was that Hamrick put the gun on the counter. However, the statement that was taken at the hospital by the police was a recorded statement and included some different recounts or accounts of that gun. The state wanted that statement to be admitted and it was people's eight. The defense registered no objection. During cross-examination with respect to establishing the foundation, Shealy indicated that she had no memory of giving the statement. As I said, the defense did not object and it therefore wasn't preserved. On appeal, with respect to the argument that it was an insufficient foundation to get this statement in because there were not sufficient detailed questions asked of the witness, and this, by the way, we know was admitted substantively. Defendant not only didn't object but actually tendered its own instruction number six to allow that statement to be admitted substantively. In light of all of this, isn't this invited error, which would eliminate the possibility of your using plain error to argue there was an insufficient foundation? How is this not invited error? I know that's a long way of asking the short question here, but I think the background is important. Yes, Justice. First, if I may, your recitation of the facts that precede your question is absolutely accurate and consistent with mine. I'd like to respond in two ways. First, it was the government's request to admit the entirety of the statement, not the defense counsel's request to admit the entirety of the statement for purposes of impeachment. Secondly, I concur that it was actually trial counsel for the defendant who tendered the instruction that suggested that the entirety of the 23 minute and 34 second recorded statement of Olivia Shealy be admitted as substantive evidence. Our argument is twofold. First, it is not invited error because the admission of that evidence was precipitated by the motion of the government, not the defense. Secondly, to the extent that the court finds that the trial counsel for the defendant did, in fact, engage in those steps that your honor has accurately recited, it is clearly ineffective assistance of counsel. Before we get to ineffective assistance of counsel, I'd like to go back to what you indicated. You said what was precipitated, so therefore it wasn't invited error. It was the defendant who didn't object and who tendered the instruction. How did it not invite the trial court to commit error by admitting this? I'm sorry, I didn't follow what you answered. Yes, Madam Justice. It was not the defendant that moved to admit the 23 minute and 34 second recorded statement. It was the government that did so. It is unclear from this record as to the purpose for which the substantive evidence IPI was submitted by the defense, whether or not that was intended to apply to this 23 minute and 34 second recorded statement or not. I recognize this is certainly an issue. I recognize that defendant's trial counsel did not object to the government's request to admit and publish the recorded statement. I also recognize that defendant's trial counsel submitted that instruction. I would respectfully argue that that combination of events does not constitute invited error because it was the government that precipitated or the government that made the motion for admission of the statement. The IPI could have pertained to a number of other inconsistent statements that appeared in the record. If this court does find that it was invited error, it was through ineffectiveness assistance of counsel. I won't go on because I understand the scope of your question was not intended for me to discuss that further at this juncture. Well, I actually was going to ask about that. If we are to turn to the ineffective assistance of counsel aspect of this issue, even if defendant is correct, under ineffective assistance of counsel, there has to be prejudice that's shown. Even if there were an objection that defense counsel made at trial, doesn't it have to be shown that the state could not correct their error or their defect, a defective foundation? Does it not also have to be shown that the trial court would not have admitted the exhibit? Thirdly, doesn't it have to be shown that the defendant would have been acquitted? Where is any of that shown here? Respectfully, I don't agree that that is the requirement to support an ineffective assistance of counsel claim. In our brief, we cited people versus McCarter for the proposition that to demonstrate a claim of ineffectiveness of counsel, a defendant need not show that he would have been acquitted, but for the mistakes of his trial counsel. Rather, your honor, prejudice may be found where there is a reasonable possibility that the outcome of the trial would have been different, but for counsel's error. In fact, prejudice may be found even where the chance of a different result is significantly less than 50%. So I appreciate your honor's question because it brings us to a discussion of the multitude of statements that were made in this wide-ranging, lengthy, recorded interview of Sheely that were highly prejudicial to Bennett, that were certainly not admitted for the purpose of prior inconsistent statements, but were in fact, according to the to be considered by the jury as substantive evidence. Mr. Murdos, may I ask a question here? Weren't there also aspects of the recorded statement that could have been deemed beneficial to a defendant's case that certain statements that were corroborative of a defendant's version of the events? Very few. Frankly, the gravamen of those portions of that wide-ranging, lengthy, recorded statement of Sheely in the hospital included a multitude of pieces of evidence that were supportive of the government's case and directly undermine the defense case. For example, I'd be happy to go through that. Sheely, during the course of the trial, described Bennett as being protective of her, but during the course of her statement, she lamented that he, quote, did not give a shit about me, end quote. She described Bennett was angry with Hamrick in Buckingham. He believed that they had burglarized his home. He was angry that they had stolen marijuana plants that he had grown. So she attached to him motive to kill Hamrick. She undermined the veracity of the assertion that he was protective of her and he was responding to the home to save her life, but in fact supported the proposition that he didn't enter the Buckingham residence that evening for the purpose of saving Sheely's life, but rather he entered the Buckingham home that evening for the purpose of killing Hamrick because he was angry with Hamrick for stealing his marijuana plants. This was extraordinarily prejudicial. It was extraordinarily incriminating. It was considered by the jury pursuant to the instruction as substantive evidence, even though it never should have come in for the purpose of impeachment. The foundation was not properly laid. It was extraordinarily admitted without objection from defendant's trial counsel to the extent that it was admitted in conjunction with an instruction that directed the jury to consider it as substantive evidence. It certainly raised the reasonable possibility that the outcome of the trial would have been different, but for those errors. And that's key because as I said in response to Madam Justice's question, as long as there's a reasonable possibility that the outcome would have been different, but for counsel's error, that's what's necessary to show prejudice under the ineffectiveness assistance of counsel standards. And clearly- Well, but we don't- Go ahead. Finish. No, I was going to say clearly the magnitude and the weight of the incriminating evidence that was admitted through the entirety of that lengthy wide ranging statement supports the proposition that it created the reasonable possibility of a different outcome at this trial. Following up on what you and Justice Harris were just talking about though, there were other statements that she made during this recorded interview regarding the road trip that was taken. And in that regard, she indicated Hamrick was armed with knives, that he hit her, threatened to kill her, threatened to rape her. That certainly was supportive of her fear of him and transferring that to the night in question and supported the she called the defendant and asked him to come to the residence. So in light of the mixed nature of these statements, it seems likely, does it not, that defense counsel really balanced the helpful versus the harmful statements that she made during this interview and actually made a decision, a strategic decision not to object when the state moved to play the entire interview. So how is that strategy so unreasonable as to constitute ineffective assistance of counsel? Thank you. Respectfully, it seems unlikely. And the reason I say that, Madam Justice, is because the testimony of this road trip that occurred two weeks previously came from Bennett and it came from Shealy. It was also corroborated through the trial that the nature of a few passing statements of Shealy during her wide ranging statement certainly wasn't sufficient to overbear the magnitude of the incriminating statements that she made in that statement regarding Bennett's alternate motive. I mean, a significant portion of Shealy's statement wasn't related to this road trip that occurred two weeks earlier. Bennett was angry with Hamrick because Hamrick had stolen Bennett's marijuana plants. Bennett was angry with Hamrick and Buckingham because they had burglarized his home. He suspected that Shealy may have set him up and been involved in the burglary. Shealy discussed that in the statement. Shealy discussed her level of alcohol-related intoxication on the night of the shooting. She undermined the strength of their relationship by saying that Bennett, quote, So all of those things certainly overbore the very brief colloquy involving the road trip that occurred previously, particularly in light of the fact that there was sufficient evidence at trial of that road trip. Bennett testified to it, Shealy testified to it, and Buckingham testified tangentially to it. So I don't know. I think I am going to interrupt because we don't have a lot of time left, and I think it would be important to turn to the second issue of the secondary murder instructions. In your brief, you argue and indicate that you think it was likely an unintentional omission that defense counsel didn't tender a second-degree murder instruction. But in the record, it certainly indicates that defense counsel actually modified a pattern instruction to remove all references to second-degree murder, and then at the instructions conference told the court that his proposed instruction number three, and I think I'm quoting this correctly, does not mention second-degree murder at all, end of quote. Certainly, doesn't that suggest strongly that defense counsel made a strategic decision not to request instructions regarding second-degree murder? Justice Zinov, could I add on to your question? And counsel, I just want to add one other component. Defendant's instruction number three, which he has significantly modified, wasn't identified as a modified IPI. How more intentional can you get? So, one of the concerns I had in preparing for today is that you might ask me point-blank if defendant's trial counsel tendered the second-degree murder instruction. My answer to that is a resounding yes and a resounding no. There's no question that at the instruction conference, defense counsel tendered IPI 7.06. But what is 7.06? It's the second-degree murder instruction. And of course, we cited in our brief the Washington case, which stands for the proposition that when the evidence supports the giving of a jury instruction on self-defense, an instruction on second-degree murder must, not may, must be given as a mandatory counterpart. So, we would expect, since the defense theory in this case was self-defense, that in a manner consistent with Washington, the second-degree instruction would be given. And you're absolutely correct. Defense counsel tendered IPI 7.06, calling it 7.06. Because all he wants is an all or nothing. Yeah, but all or nothing doesn't apply here. All or nothing simply does not apply to this case because there's no possibility of an all or nothing when self-defense is raised. This isn't a case of... Well, there is if you're able to get this instruction in or if you're able to get the modified instruction in that the state wound up submitting and using. Well, the modified instruction, to the extent that it omitted all reference to second-degree murder, is virtually nonsensical. And that's what I was discussing earlier in my concern that you might ask me if the second-degree murder instruction was tendered. I can't hazard a guess as to why trial counsel for the defendant, in response to the objection of the government to 7.06, attempted to assuage the concerns about 7.06 by indicating, well, it doesn't say second-degree murder. Quite frankly, a 7.06 instruction must say second-degree murder. And certainly, if it omits the word second-degree murder, which is inconceivable, it should be denoted as a modified IPI, which it wasn't. So frankly, this all supports the proposition of ineffectiveness assistance of counsel. But I want to address very squarely what you said about the all or nothing defense. Certainly, this court is aware that there can be an all or nothing strategy to a declination to tender the 7.06 instruction in a murder case. That all or nothing approach doesn't apply when the entire case is predicated upon a theory of self-defense. It is inconceivable that the modified IPI tendered by defense counsel would contribute to an all or nothing strategy. It's not inconceivable if you don't think you have that much weight in your self-defense claim. But you still want to raise it because you're in front of a jury. If you can get at least one person on that jury to buy it, you're good. It's called a trial strategy. When the only thing you're selling is self-defense, and that's the only thing this defense counsel was selling, the jury, according to law, can't buy self-defense without also having offered for sale the second-degree murder. I see that I'm out of my time. Well, you'll have time on rebuttal. I'll save my questions for then. All right. Thank you. For the reasons argued, we respectfully request this court to reverse the defendant's conviction to remand for a new trial. Thank you. All right. Thank you, Mr. Murtis. You will have time in rebuttal. Ms. Connelly, you may proceed with your argument. Good morning, your honors. May it please the court, counsel. Defendant raised two issues in this case. Both of them, he clearly admits that those claims were forfeited. As far as the admission of Olivia Shealy's prior inconsistent statement, the issue would be reviewed, as the defendant requested, under the lens of plain error review. There was, first, no clear or obvious error in this case. The trial court properly allowed the state to prior inconsistent statement. The state met all the statutory requirements for the substantive admission of the statement. Good morning. Excuse me. I'm sorry to interrupt. I'd actually like to start with where we ended with opposing counsel, and that is discussing the jury instruction and the all-or-nothing strategy that was subject of the question Justice DeArmond asked and counsel responded to. Can you share with us why was an all-or-nothing defense strategy reasonable under the circumstances of this case, in your view? Counsel contends it certainly was not given the self-defense. Well, the trial counsel, in any case, has the ability to make a determination whether or not they're going to do a compromise verdict in this case or give an all-or-nothing. And in this case, clearly, defense counsel, by never requesting a second-degree murder instruction, didn't want to have a compromise verdict. So when you do an all-or-nothing, you're either guilty of first-degree murder or not guilty as a reason of self-defense. And counsel can make that analysis in any case and determine whether or not they want to have a compromise verdict. It's reasonable in this case because clearly the evidence was not that strong to establish self-defense. And if it's not going to be clear for self-defense, I don't see how it's going to be clear for a second-degree compromise verdict in this case. That is clearly trial strategy, and that goes to the deficiency prong of ineffective assists of counsel in this case. In addition to that, you also have the evidence in this case, you have to look at it under the prejudice prong, and the evidence in this case clearly was not closely balanced. And I outlined in my brief in great detail why the evidence was not closely balanced. So the defendant has to make both prongs of the Strickland standard in order to establish ineffective assistance in counsel. As to state's position, the defendant cannot establish either prong. And with regard to closely balanced, though, that has to do with plain error. And we really don't get to plain error even with regard to the jury instruction, do we not? Because there was no objection to giving 15A, which was the instruction the court ordered the state to prepare and submit. So there was invited error here, was there not, as well? Right. So we argued that there was invited error in Issue 2. So you don't even get to plain error in this case. And I think what happened in Issue 2 is that there was a little bit of confusion as to they wanted to have plain error and they wanted to have ineffective assistance of trial counsel. And I think the threshold issue for this court is to determine whether or not defense counsel actually requested a jury instruction in this case. And it's clear from the evidence from the record in this case that he didn't. He submitted the modified jury instruction in which he took out any reference to second-degree murder in this case. He also clearly, during the jury instruction conference, made two comments, defense counsel made two comments where he clearly expressed that he said, quote, this is a self-defense case. And when the state questioned defense number three, the modified jury instruction of 7.06, defense counsel stated, your honor, in my proposed defendant's instruction number two, it does not mention second-degree murder at all. Defense counsel never wanted to have second-degree murder before the jury. So that then, because he did not ever request it, you look at it under the lens of ineffective assistance of counsel. Even if it is, we find, the trial courts find that there was invited error. Then you're going to look at ineffective assistance of counsel. The fact that the defendant raises a claim of plain error, I submit that that's like putting a square peg in a round hole. It just doesn't fit because the defense counsel never requested. So it couldn't be any error for the trial court in this case for failing to give it pursuant to the decision in People v. Washington. There was no error by the trial court in this case because defense counsel never submitted the instruction. So we submit it. Go ahead. No, that's okay. Is there, all right, sorry, it's a little hard. Is there anything in the record to suggest that defense counsel acted under a misapprehension of the law with respect to second-degree murder? No, no. And the defendant doesn't point to anything that's in the record that suggests that there was any misapprehension of the law in this case. This is, again, it constitutes trial strategy and there's no requirement, it's a lesser mitigated offense. It's not a lesser included offense. There's no requirement that you have to consult with the defendant in this case whether or not you make the decision to have a second-degree murder instruction. So this was clearly trial strategy. There's nothing in the record to suggest that defense counsel operated under some misconception as to what the evidence was or whether or not they could prove this offense. This was a decision by trial counsel. End of story. Thank you. Returning to the first issue in this case, as far as the admission of the prior inconsistent statement, the defendant makes many arguments regarding whether or not the state met the foundational requirements in this case. And in the brief, I went in detail as to all of the foundational requirements that the state established. Today, I'd like to focus on the defendant's argument about the failure to confront the witness regarding the contents of the actual statement. And in that, as I pointed out in my brief, there's two reasons why that argument fails. One is the plain reading of the statute. A plain reading of the statute shows that it does not require that the witness be confronted with each individual inconsistent statement contained within a prior recorded statement. Instead, what the statute, and in this case, it's 115-10.1, it only requires that the witness be subject to cross-examination in order to prove that the witness had an opportunity to explain any inconsistency. So, in addition to the plain... Where was that done? So, if the individual questions, if the witness is not confronted with the specific statement, wouldn't the rule that you proposed deprive the witness of an opportunity to explain the inconsistency? Well, in this case, there was an opportunity for the witness to explain the inconsistency by the very fact that she repeatedly denied that she gave the statement. That's her inconsistency. And then we cited to a case, Pupil versus McDonald in our case, in which that's exactly what happened. She had the opportunity to say, yes, I said that, no, I didn't say that, or give some other reason. And in this case, she says, I don't remember giving that statement, I didn't give that statement. So, that's her opportunity to explain the inconsistency in this case. We also cited to two different cases, Pupil versus Campus, which is a third district case in which the court considered this exact issue raised by the defendant in this case. And in that case, it had to do with subpart A, which was a written statement. And in that case, the court specifically rejected the defendant's argument, and in fact, held that in the place of a declarance acknowledgement contained in subpart A, subpart B, subpart A requires that the statement is proved to have been written or signed by the declarant. So, what the defendant in this case is suggesting is that this court take the three different parts, A, B, and C, and conflate all of them together. The only subpart that requires an acknowledgement hearing is subpart B, because that has to do with an oral statement. And then we also have this court, the fourth district's prior decision in Pupil versus Brothers. Now, admittedly, that had to do with an oral statement. Well, what about Pupil versus Grayson? There, Justice Steinman outlined specifically the foundation that is required for a prior inconsistent statement. How do you reconcile that with what you've just talked about? Well, but Grayson was decided prior to Pupil versus Brothers, which, and I may be wrong on this, but I believe that Justice Steinman also wrote that one. But in, Brothers came out subsequently. And in that case, that had to do with, they outlined the procedures for an acknowledgement hearing for an oral statement. And specifically held, it said the court also specifically excluded this requirement when a proponent is seeking to admit a written or recorded prior consistent statement. So, you know, Brothers came out in 2015, and that is, I think, certainly persuasive for this court to look at, to make a determination as to the defendant's argument in this case, that we need to be able to address each of these separately. And it makes sense in the terms of a, when you have a oral statement or written statement or recorded statement. A recorded statement, you know exactly, you have the recording right there. So, in an oral statement, it's not written down, it's not recorded. So, there's different ways in order to get those, admit those, based upon what kind of statement the state is, in this case, is seeking to admit. Ms. Connelly, may I ask a question? It's more general, but relating to this specific point that you're discussing right now in regards to foundation. Are you aware of any case law involving either plain error or ineffective assistance that has found the failure to object based on lack of foundation to be either plain error or ineffective assistance of counsel? I am not aware of that. And these cases that you're discussing, several of which you say are close, they're not close from the standpoint of the overarching argument being made by defendant here that it was plain error or ineffective assistance. But what I'm citing to those is as far as whether or not there was a clear or obvious error. So, the defendant first, before you get to first prong or second prong, has to establish that there was error in this case. So, I'm citing to campus and brothers for the proposition for that threshold issue is whether or not there was error in this case. We submit. I'm sorry for interrupting. Would you concede that it's possible for it to constitute plain error or ineffective assistance for defense counsel to fail to object based on foundation? Or do you believe the reason there is no case law out there is because it doesn't constitute either plain error or ineffective assistance? It doesn't constitute plain error in this case because, again, these stand for the proposition that there was no error in this case. And plain error, then after you look at whether or not there was error under plain error analysis, you're going to look at under the first prong or the second prong. And we submit the defendant cannot establish, actually, I'm sorry, in this case, the defendant only seeks review under the first prong, under the closely balanced evidence prong in this case. He does not submit that he could establish the second prong of review. And as far as ineffective assistance of counsel, again, you have to look at the evidence in this case to determine whether or not this made a difference in the trial. And we submit that the evidence in this case clearly showed that the defendant had established first-degree murder. The defendant admitted that he shot and killed the victim in this case. And there was the defendant's version of the offense is not credible. And none of the other evidence supported the defendant's version of events in this case. In order to prevail on a plain error argument or ineffective assistance argument relating to the failure to object based on foundation, wouldn't a court of defense be convinced that it would have been impossible for foundation to have been laid? I don't understand what you mean when you say that it would be impossible for the, I don't think it was impossible for foundation to have been laid in this case. No, exactly. And that is my point. In order to prevail on an argument that it was plain error or ineffective assistance to not object based on foundation on appeal, wouldn't the defendant have to identify some impediment that would have prevented the state from being able to lay the foundation? And if that's the case, is there any such impediment that's identifiable in the record here? No, there is no such impediment identified in the record in this case. And what the record clearly shows is defense counsel, he's stipulated to the accuracy of the recording. So that establishes one of the elements for the admission of the prior inconsistent statement. And defense counsel, when the detective was called in rebuttal in this case, defense counsel stated that he had no objection to hurt the admission of the evidence in this case. So there clearly was no plain error in this case and the defendant cannot establish that there was ineffective assistance of counsel regarding the admission of this evidence. So with that, the people respectfully request that the defendant's conviction in this case be affirmed. Thank you. Thank you, Ms. Connelly. Mr. Bennett, do you have a rebuttal argument? Thank you. I'm going to address three issues very directly. First, this was an extraordinarily closely balanced case and the evidence most certainly did support the defendant's theory of self-defense. Not one prosecution witness plans to have seen Bennett in possession of a gun. There are witnesses who testified that Hamrick was in possession of a gun. And in fact, Hamrick moved when Bennett rushed toward the gun in a manner of self-defense. Furthermore, this was not just self-defense, but also defense of another person. And the testimony was that Bennett responded to the house for the purpose of defending Sheely. This was an extraordinarily closely balanced case. Addressing the all or nothing proposition that was addressed to my opposing counsel and to me in the last colloquy, that does not apply to a second degree murder instruction. And I'd like to go back to People v. Wilmington, that Illinois Supreme Court case that was cited in our brief that provides, quote, a defendant who tenders a lesser included offense instruction exposes himself to a potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction. That is not the case with the tender of a second degree murder instruction, as a defendant can only be found of second degree murder if the state has proven already all of the elements of first degree murder. So all of the- Counsel, your point presupposes that defendants number three, 706, was a tendered second degree murder instruction, and it wasn't. It was a modified version expressly removing second degree murder. He wanted the third proposition in there without referencing an alternative verdict. I mean, it was a clear decision by trial counsel. I want the state to have to prove the third proposition, but I don't want it to result then in a verdict of second degree murder. That's as pretty upfront as you can get in wanting an all or nothing instruction. Which is absolutely demonstrative of a clear misapprehension of the law by defendant's trial counsel. He didn't misapprehend it. He took it out specifically, and even when confronted, acknowledged to the court. I've removed any reference. There's no reference to second degree murder in there. Yes, but it was the legal equivalent or the equivalent, I should say, of tendering a second degree murder instruction and asking the judge, judge, we'd like you to instruct the jury on second degree murder, but please don't tell them anything about second degree murder. It's actually pretty slick. If he could sell it, it's pretty slick. He did. You want to criticize the guy and say he's incompetent. In fact, he was pretty slick in what he did and got it done. Defendant is sitting in prison on a 60 year sentence. He might not agree with the process. That's probably more a problem of the facts. I think Mr. Bennett would quibble with the assertion that a slick strategy by his trial counsel got it done. He's serving a 60 year sentence based on that. The last thing I want to say is that, and I want to be very clear in how I say this, because there was this question of my opposing counsel, was it impossible that the state could have laid foundation for the admission of the prior inconsistent statement? I want to concede something and make a broader and more important point. It's not impossible that the government could not have laid foundation for admission of the specific definite statement that was inconsistent with Sheely's trial testimony. That's not impossible, but it's absolutely legally impossible that the government could have laid foundation for admission of the entirety of the statement, because the entirety of that 23 minute, 34 second, wide ranging, wide varied statement was not under any circumstance admissible for purposes of impeaching on the singular proposition of whether Sheely ever saw Hamrick with a gun. It was impossible for the government to lay foundation for admission of the entire statement. To the extent that this court is considering in its review of the issue of ineffectiveness of counsel, whether the failure of defense counsel at trial to object to the admission of that statement prevented this government from doing something that was otherwise impossible for it to do, I think it was absolutely impossible for the government to prove that, to demonstrate that foundation. Thank you so much for your time. Again, we request reversal and remand. All right. Thank you, Mr. Murtis. Thank you both. Both of you provided excellent arguments. The case will be taken under advisement and a written decision will be issued.